Jeremy S. Golden (SBN 228007)
Golden & Cardona-Loya, LLP
3130 Bonita Road, Suite 200B
Chula Vista, CA 91910
jeremy@goldencardona.com
Phone: 619-476-0030; Fax: 775-898-5471
Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AGGIE THAO, | Case No.: 1:17-CV-01298-LJO-EPG |
| Plaintiff, | **Memorandum of Points and Authorities in Support of Plaintiff's Motion for Default Judgment** |
| v. | |
| LAW OFFICES OF CHRISTOPHER GLENN BECKOM, et al. | Date: March 9, 2018
Time: 10:00 a.m.
Crtrm: 10, 6th Floor |
| Defendants. | The Hon. Erica P. Grosjean |

## I. INTRODUCTION

Plaintiff filed her Complaint against Defendants Law Offices of Christopher Glenn Beckom and ULRS, Inc. dba United Legal Group (collectively known as "Defendants") on September 27, 2017 for violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.* Defendants attempted to collect on a fraudulent debt from Plaintiff and in doing so failed to provide Plaintiff with the proper notices and falsely threatened legal action against Plaintiff. Plaintiff obtained entry of defaults against Defendants on December 27, 2017.

Accordingly, Plaintiff seeks default judgment against Defendants for $27,000 plus attorneys' fees and costs.

## II.  STATEMENT OF FACTS

Plaintiff signed up for a home alarm from ADT.  *Thao Declaration*, ¶2.  ADT sent someone from an affiliate company to install the alarm. The alarm was installed and Plaintiff made payments to ADT.  The affiliate company was either named Defender Security Company or somehow affiliated with them. Unbeknownst to Plaintiff, her name was forged to a contract and Defender Security Corporation claimed she owed a balance under this forged contract.  *Id.*

At a time unknown, ULRS, Inc. dba United Legal Group ("ULRS) and its attorney, Law Offices of Christopher Glenn Beckom ("LOCGB") were assigned the rights to collect this fraudulent debt ("the Debt").  *Id.* ¶3. The Debt was created as a result of fraud in that Plaintiff's name was forged to the purported contract that created the Debt.  *Id.* ¶4.

Defendants sent Plaintiff a demand letter for payment on the Debt. The letter did not contain the required notice under 15 U.S.C. §1692g.  The letter threatened to file a lawsuit against Plaintiff.  *Id.* ¶5.  The letter claimed the amount due was $2,781.99 composed of a principal balance of $1,317.86, interest in the amount of $414.13 and attorneys' fees in the amount of $1,050.  The letter included a draft of a complaint.  *Id.*  At the time the threat was made Defendants did not have the intention to file the lawsuit against Plaintiff.  *Id.* ¶6.  The letter misstated the amount of the Debt and wrongfully tried to collect interest and attorneys' fees.  *Id.* ¶7.  The letter was the initial communication from Defendants and included a demand for a response within 10 days thereby overshadowing any rights to request verification and validation.  *Id.* ¶8.

The letter further stated that if the demand was not responded to within ten days legal action would be commenced.  *Id.* ¶9.  Defendants did not commence legal action against Plaintiff.  *Id.* ¶10.  As a result of the acts alleged above, Plaintiff suffered emotional distress. *Id.* ¶11.  Plaintiff became very worried that a lawsuit was going to be filed against her for a debt she did not owe.  It caused Plaintiff significant stress, worry and concern. When Plaintiff

would check the mail she was worried there would be a lawsuit. *Id.* Plaintiff already was stretched thin regarding her finances and having to worry about a lawsuit was of great concern. Plaintiff was also concerned with not only having to pay a debt on a forged contract but how high the interest rate and attorneys' fees were in the letter. *Id.*

### III.  ARGUMENT

**A.    Defendant Violated the FDCPA.**

    1.    <u>The Fair Debt Collection Practices Act</u>

The purpose of the Fair Debt Collection Practices Act is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."

Defendants failed to provide Plaintiff with a proper validation notice and made several false statements and misrepresentations to Plaintiff in its attempts to collect a debt and therefore violated 15 U.S.C. § 1692e (prohibits false representations); 15 U.S.C. § 1692e(2)(A) (prohibits false impression of legal status of debt); 15 U.S.C. § 1692e(5) (prohibits threatening action that was not intended to be taken); 15 U.S.C. § 1692e(10) (generally prohibits false representation and deceptive means); and 15 U.S.C. § 1692g(a) (failure to send validation notice within five days of initial communication).

Defendants conduct in attempting to collect the debt also violated 15 U.S.C. 1692(f) by using unfair or unconscionable means to collect or attempt to collect a debt and 15 U.S.C. 1692(f)(1) by attempting to collect an amount not authorized by the agreement that credited the debt.

**B.    Plaintiff's Claim of Damages Is Reasonable.**

    1.    <u>Statutory Damages</u>

Plaintiff is entitled to $1,000 per Defendant in statutory damages pursuant to 15 U.S.C. §1692k(a)(2)(A) for violations of the Fair Debt Collection Practices Act. Plaintiff requests $2,000 in statutory damages against Defendants.

//

2. <u>Emotional Distress</u>

The actions taken by Defendants in violation of the statues cited caused Ms. Thao stress, worry, and loss of sleep.

In a recent case in the United States District Court for the Northern District of California, *Fausto et al v. Credigy Services Corporation, et al.*, no. 5:07-cv-05658-JW, a jury awarded $500,000 against a debt collector who called a debtor 90 times and made false claims.  The verdict consisted of $100,000 in actual damages and $400,000 in punitive damages. <u>Id</u>.

In *Nelson v. Equifax Information Services, LLC*, 522 F.Supp.2d 1222 (C.D. Cal. 2007), a jury's award of $85,000 in actual damages arising from purported debtor's emotional distress due to debt collection agency's violation of FDCPA was upheld by the trial judge.

Courts in California have awarded large amounts to consumers in default judgments. For example, the United States District Court – Southern District of California  awarded $92,000 plus attorneys' fees in the amount of $24,934.50 against a debt collector. *Myers v. LHR, Inc.,* 543 F.Supp.2d 1215 (S.D. Cal. 2008). In supporting its award, the *Myers* court cited to *Bennett v. Bay ARTea Recovery Services*, 2007 U.S.App. LEXIS 7481 (9th Cir. 2007) (Ninth Circuit affirms district court's default judgment award of $100,000 based upon egregious debt collection practices under FDCPA).

Plaintiff in this matter requests $25,000 in damages for emotional distress.

3. <u>Attorneys' Fees and Costs</u>

    a. <u>Attorney Fees Are Mandatory</u>

The Fair Debt Collection Practices Act specifically authorizes an award of attorneys' fees to a prevailing plaintiff.  15 U.S.C. §1692k(a)(3).  In litigation under the Fair Debt Collection Practices Act, an award of attorney fees is mandatory, not discretionary. *Graziano v. Harrison*, 950 F.2d 107, 113 (3rd Cir. 1991); *Piples v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 28 (2d Cir. 1989) ("Because the Fair Debt Collection Practices Act was violated, however, the statute requires the award of costs and reasonable attorney's fee. . ."); *Mace v. Van Ru Credit*, 109 F.3d 338, 344 N.3 (7th Cir. 1997).

An award of attorney's fees to a successful consumer under the Fair Debt Collection Practices Act is designed to compensate the consumer for her role in privately enforcing the Fair Debt Collection Practices Act. *Tolentino v. Friedman*, 46 F.3d 645, 651 (7th Cir. 1995); *see also*, *Murphy v. Ford Motor Credit Co.,* 629 F.2d 556 (8th Cir. 1980) (Truth in Lending case). Congress clearly intended that the prevailing consumer would recover his or her reasonable attorney's fees and costs.

Given the structure of the section, attorney's fees should not be construed as a special or discretionary remedy; rather, the Act mandates an award of attorney's fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general. *Graziano*, 950 F.2d 107, 113 (3d Cir. 1991) (emphasis added). In the instant case, Plaintiff is entitled to an award of attorney's fees and costs, since Plaintiff is the prevailing party.

### b. <u>The Lodestar Method Is Used To Calculate Fees</u>

In calculating an award of attorneys' fees, the court must first begin with the "lodestar" figure, which one calculates by multiplying the hours reasonably expended times an allowed hourly rate. *See Hensley v. Eckerhart*, 103 S.Ct. 1933, 1939 (1983) (viewing an award of fees under 42 U.S.C. §1988). The burden is on the applicant to prove that the fee request is reasonable, with a strong presumption that the lodestar amount represents a fair and appropriate fee award. *Hensley*, 103 S.Ct. at 1941.

Although *Hensley* was decided in the context of a civil rights case, the lodestar analysis is applicable to all cases involving an attorney fee shifting statute. The Supreme Court has previously noted that, "We have stated in the past that fee shifting statutes' similar language is 'a strong indication' that they are to be interpreted alike." *Independent Federation of Flight Attendants v. Zipes*, 491 U.S. 754, 109 S.Ct. 2732, 105 L.Ed.2d 639 (1989) (quoting *Northcross v. Memphis Bd. Of Education*, 412 U.S. 427, 428, 93 S.Ct. 2201, 2202, 37 L.Ed.2d 48 (1973).)

The determination of the allowable hours rests with the sound discretion of the trial court. *Hensley,* 103 S.Ct. at 1941. A determination of the hourly rate by the trial court

should consider a rate "commensurate which [counsel] could obtain by taking other types of cases." *Tolentino*, 46 F.3d 645, 652 - 653 (7th Cir. 1995).

In both pre-litigation and litigation of the present action, Plaintiff's counsel expended a total of 10 hours in this matter.  This consists of 6.3 hours of work at $350 per hour for Jeremy Golden's time. *Golden Declaration*, ¶6.  Mr. Golden was admitted to the bar in 2003 and practices exclusively in the field of consumer law.  *Golden Declaration*, ¶6. Partner Octavio Cardona-Loya II also billed .1 hour of work at $325 per hour.  *Golden Declaration*, ¶6.  Mr. Cardona-Loya was admitted to the bar in 2008 and practices exclusively in the field of consumer law.  *Golden Declaration*, ¶6.  Associate attorney Cory Teed also billed 3.6 hours of work at $200 per hour.  *Golden Declaration*, ¶6.  Mr. Teed was admitted to the bar in 2014 and practices exclusively in the field of consumer law.  *Golden Declaration*, ¶6.  The attorneys' fees associated with this matter are $2,957.50.

        c.    <u>Costs.</u>

Plaintiff is entitled to $270 in costs for service of process fess and $400 for the filing fee, for a total of $670.  *Golden Declaration*, ¶7.

## IV.  CONCLUSION

Defendants violated multiple sections of the Fair Debt Collection Practices Act. Plaintiff respectfully requests the Court to enter default judgment against Defendants for $27,000 plus attorney's fees and costs in the amount of $3,627.50 for a total judgment of $30,627.50.

Date:  January 29, 2018       \_\_\_s/ Jeremy S. Golden_____
      Jeremy S. Golden
      Attorney for Plaintiff