IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AGGIE THAO,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>LAW OFFICES OF CHRISTOPHER GLENN BECKOM, *et al.*,<br><br>　　　　　Defendants. | **Case No. 1:17-cv-01298-LJO-EPG**<br><br>**FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT MOTION TO VACATE DEFAULT JUDGMENT BE GRANTED**<br><br>(ECF No. 20)<br><br>**OBJECTIONS, IF ANY, DUE IN 14 DAYS** |

The Court has before it the motion to vacate default judgment, filed by Defendant ULRS, Inc., dba United Legal Group ("Defendant ULRS") (ECF No. 20). ULRS claims that it was not properly served with the complaint and did not have actual notice of it. ULRS also claims that it has legitimate defenses to Plaintiff's claims. Plaintiff asserts that it properly served ULRS and that default judgment was proper.

The Court held a hearing on the motion on August 17, 2018, at which the parties provided the Court with argument. Upon review of the record, and consideration of the arguments presented, the Court recommends that Defendant ULRS's motion to vacate default judgment be GRANTED on the basis that Plaintiff did not properly serve Defendant ULRS.

**I.　　BACKGROUND**

Plaintiff filed this civil action on September 27, 2017. (ECF No. 1.) Plaintiff alleges

violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.* ("FDCPA") arising from when Defendants obtained information regarding an alleged consumer debt and attempted to collect upon it. Plaintiff alleges the debt was fraudulently created as a result of Plaintiff's name being forged to a purported contract that created the debt. Plaintiff alleges that Defendants then sent Plaintiff a demand letter for payment on the debt that did not contain the required notice under 15 U.S.C. §1692g. The letter threatened to file a lawsuit against Plaintiff, but Plaintiff alleges that at the time the threat was made, Defendants had no intention to file a lawsuit. Plaintiff alleges that the letter misstated the amount of the debt and wrongfully tried to collect interest and attorneys' fees. Although the letter stated that legal action would be commenced if the demand was not responded to within ten days, Defendants did not commence legal action. Plaintiff alleges that, as a result of the Defendants' acts, Plaintiff suffered emotional distress. (ECF No. 1 at 3-4.)

Plaintiff filed returns of service indicating that Defendants were served with the complaint. (ECF Nos. 5-6.) Defendants did not file a responsive pleading as required by the Federal Rules of Civil Procedure, and Plaintiff requested entry of default against Defendants. (ECF No. 7.)

On December 27, 2017, the Court entered default against Defendants. (ECF Nos. 8-9.) Plaintiff thereafter filed a motion for default judgment. (ECF No. 11.) The Court held a hearing on the motion on March 16, 2018. (ECF No. 15.) Plaintiff was sworn and testified and exhibits were admitted into evidence. (*Id.*) At the request of the Court, Plaintiff filed supplemental briefing and evidence in support of the motion for default judgment on April 9, 2016. (ECF No. 16.) Plaintiff's motion for default judgment and supplemental filing requested judgment in the amount of $27,000.00 plus attorney's fees and costs in the amount of $6,149.75 for a total judgment of $33,149.75. (ECF Nos. 11, 16.)

On April 30, 2018, the Court issued Findings and Recommendations that Plaintiff's motion for default judgment be granted and that judgment be entered in favor of Plaintiff and against Defendants in the amount of $33,149.75. (ECF No. 17.) The district court adopted in part and modified in part the Findings and Recommendations and judgment was entered in favor of Plaintiff and against Defendants in the amount of $25,149.75. (ECF Nos. 18, 19.)

On July 11, 2018, Defendant ULRS filed a motion to vacate default and default judgment. (ECF No. 20.) The Court held a hearing on the motion on August 17, 2018, at which Plaintiff and Defendant ULRS presented argument. (ECF No. 26). The Court also granted leave to the parties to file supplemental briefing regarding the issues discussed at the hearing. (ECF No. 27.) On August 24, 2018, ULRS filed a supplemental brief. (ECF No. 28.) Plaintiff has not submitted a supplemental brief.

**II.    APPLICABLE LEGAL STANDARDS**

The Federal Rules of Civil Procedure govern the entry of default. Once default has been entered, "[t]he court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c).

In evaluating whether good cause exists, the court may consider "(1) whether the party seeking to set aside the default engaged in culpable conduct that led to the default; (2) whether it had no meritorious defense; or (3) whether reopening the default judgment would prejudice the other party." *United States v. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010) (citation omitted). The standard for good cause, "which is the same as is used to determine whether a default judgment should be set aside under Rule 60(b), is disjunctive, such that a finding that any one of these factors is true is sufficient reason for the district court to refuse to set aside the default." *Id.*

However, if a party was not in fact served, the judgment is void and must be vacated without evaluation of the above listed factors. "A person is not bound by a judgment in a litigation to which he or she has not been made a party by service of process." *Mason v. Genisco Technology Corp*. 960 F.2d 849, 851 (9th Cir. 1992); *LREP Arizona LLC v. 597 Broadway Realty LP,* 2018 WL 1729348, at *2 (D. Ariz., Apr. 10, 2018) ("Defendants contend that Plaintiff's failure to serve them with the summons and complaint renders the judgment entered in this case void and authorizes the Court to set aside the judgment under Rule 60(b)(1), (4), and/or (6). The Court agrees."). Federal Rule of Civil Procedure 60(b)(4) authorizes the Court to relieve a party from a final judgment if "the judgment is void." *Fed. R. Civ. P.* 60(b)(4).

**III.   FACTS REGARDING SERVICE**

    A.  Plaintiff's Evidence

Plaintiff contends that it properly served Defendant ULRS by leaving the summons and

complaint with the security guard for the building where Defendant ULRS's registered agent has its address of record, 1999 Avenue of the Stars:

> Plaintiff's counsel retained Thomas Miller of AMS to serve the summons and complaint on ULRS. *Miller Declaration*, ¶3. Mr. Miller served the summons and complaint on ULRS on October 11, 2017. *Id.*, ¶4, Exhibit 1. Mr. Miller has a specific recollection of the service in this case. *Id.*, ¶5. After Mr. Miller received the work order with respect to the above captioned case, he went to the address for the agent for service of process at 1999 Avenue of the Stars, #1100, Los Angeles, CA 90067. *Id.*, ¶6. The building is a high security building which requires check-in with a security guard. *Id.*
>
> Mr. Miller introduced himself to the security guard and informed him that he was a process server and was there to serve documents on ULRS. *Id.*, ¶7. Mr. Miller provided the security guard with his driver's license. *Id.* The security guard stated that his name was Juan Sanchez. *Id.* Mr. Miller also provided his work order to the security guard so he could see exactly what papers Mr. Miller had to serve. *Id.* The security guard picked up the phone and dialed back into the office. *Id.*, ¶8. The security guard announced who Mr. Miller was and that Mr. Miller was there to serve the documents identified in the work order. *Id.* The security guard requested that Mr. Miller be permitted back into the office. *Id.* The individual who answered the phone kept telling the security guard he would check. *Id.*, ¶9. After being on hold for an extended period of time the security guard eventually told Mr. Miller that he could not enter the office. *Id.* Mr. Miller was prohibited from proceeding any further. *Id.* Mr. Miller therefore left the documents including the summons and complaint with the security guard who was the person in charge. *Id.*, ¶10. The guard said he understood what Mr. Miller was doing. *Id.* The security guard did not refuse the documents. *Id.* The security guard was an extension of the office. *Id.* This is proper service and precisely how Mr. Miller is to act under these circumstances. *Id.* Mr. Miller followed up the service with an email to AMS and executed a proof of service. *Id.*, ¶¶11-12, Exhibits 2-3.
>
> Service was performed as required by California law on the agent for service of process at the address ULRS designated on October 11, 2017. *Golden Declaration*, ¶7.

(ECF No. 23, at p. 3). Plaintiff submits declarations supporting this account of events.

Plaintiff also states that it personally served co-Defendant Law Offices of Christopher Glenn Beckom at a time when attorney Beckom represented ULRS.

Plaintiff also submits evidence from another case in support of the proposition that Defendant ULRS has a practice of evading service.

### B. <u>Defendant ULRS's Evidence</u>

Defendant ULRS submitted several declarations. Except for the question of whether a

security guard named Juan Sanchez worked at the building located at 1999 Avenue of the Stars at the time that service was attempted,[1] ULRS's declarations do not directly contest Plaintiff's evidence. All the declarations submitted by ULRS claim that ULRS never received the summons and complaint, and did not know of the lawsuit until April 2018.

Specifically, Mark Hakim, President of ULRS, states that ULRS never had an address at 1999 Avenue of the Stars. Moreover "from April 16, 2018 to April 19, 2018, I discovered that Plaintiff Aggie Thao had filed a lawsuit against Christopher Beckom and ULRS. This is the first time I had any knowledge of a lawsuit by Plaintiff Aggie Thao." (ECF No. 20-4, at p. 3)

Peter Bronstein, ULRS's registered agent for service of process, submitted a very brief declaration stating, "I have no record of receiving the Summons and Complaint in this case prior to May 30, 2018," and, "I did not send the summons and complaint nor a copy to ULRS, Inc. before May 30, 2018." (ECF No. 25-1.)

ULRS also submitted a declaration from Eitan Farahan, an attorney and general manager for the Premier Business Centers for the location at 1999 Avenue of the Stars, 11th Floor, Los Angeles, California 90067, since April 17, 2017. Farahan states that "[a]fter reviewing all of my records there was no one named Thomas Miller nor anyone else attempting to reach the floor on October 11, 2017 to serve process." (ECF No. 20-2, at p. 2.) Moreover, "[f]or mail and clients every tenant on the floor, including but not limited to Peter Bronstein, must maintain a list of eligible names to enter the floor or accept mail. According to the list since April 2017 when I began working no entity named ULRS, Inc. was allowed to receive mail or enter the 11th floor at 1999 Avenue of the Stars . . . ." (ECF No. 20-2, at p. 2).

In supplemental briefing, ULRS submitted the declaration of Donald McMillian, assistant director of security at 1999 Avenue of the Stars. Mr. McMillian declares that "at no time in the last 3 years has anyone by the name of Juan Sanchez worked as security guard at 1999 Avenue of

---

[1] The Court recognizes that there is a dispute regarding whether service was made to a security guard at this building. (*Compare* ECF No. 23-2 at 2 (declaration of Plaintiff's process server stating service was made on "Juan Chavez," the security guard on duty at the building on October 11, 2017) *with* ECF No. 28 (declaration of assistant director of security at the building stating that no one named "Juan Chavez" has worked at the building as a security guard in the past three years). The Court does not need to resolve this dispute given the undisputed failure of Plaintiff to mail a copy of the summons and complaint to ULRS, as discussed below.

the Stars, Los Angeles, California." (ECF No. 28 at 6.) Under the security protocol for the building, "[i]f someone attempts to serve a tenant at 1999 Avenue of the Stars, Los Angeles, California, the tenant or tenant[']s receptionist is contacted for authorization to be admitted to the tenant[']s floor." (*Id.*) "If the process server is not granted access then the process server is informed that they are not authorized to accept service." (*Id.*) "If the process server drops the documents on the security guards desk or otherwise attempts to hand the documents to the security guard, the security guard will put the documents at the end of the desk." (*Id.*) "At the end of the day the documents are brought to the security guard office and placed in a bankers box where they remain. No one is contacted including the tenant." (*Id.*)

## IV. DISCUSSION

As an initial matter, these facts cause the Court to doubt Defendant ULRS' compliance with its obligations to accept service through a registered agent. It is undisputed that Peter Bronstein is the registered agent of ULRS and his registered address is 1999 Avenue of the Stars, 11th Floor, Los Angeles, CA 90067. The registered agent is the person designated with the State of California, Secretary of State to accept service of process. Cal. Code Civ. Proc., § 416.10 ("A summons may be served on a corporation by delivering a copy of the summons and the complaint by any of the following methods: (a) To the person designated as agent for service of process as provided by any provision in Section 202, 1502, 2105, or 2107 of the Corporations Code . . . .").

Notwithstanding this legal obligation, the president of ULRS has submitted a declaration in this case stating that ULRS did not have an address at 1999 Avenue of the Stars. While that might technically be true, this statement completely ignores that ULRS's registered agent is located at that address. This omission leads the Court to believe that ULRS does not take seriously its obligations to have a registered agent available for service of process at that address.

Similarly, Defendant ULRS has submitted declarations from Eitan Farahan, the general manager of the 11th floor of the 1999 Avenue of the Stars building, and Donald McMillan, assistant director of security of the entire building. These declarations state that only persons listed on a list of eligible names may enter the 11th floor at all unless the tenant or the tenant's

receptionist provides specific authorization for that person to be admitted. (ECF No. 20-2; ECF No. 28 at 6.) If true, that would mean that ULRS has designated a registered agent located at an address that precludes persons from entering the 11th floor to complete service unless security receives specific permission from the tenant or the tenant's receptionist to allow such entry. This account of events would explain why Plaintiff's process server was not given access to the floor to service the summons and complaint.

Finally, the declaration of ULRS's registered agent, Peter Bronstein, leaves much to be desired. In the face of evidence that a process server was prohibited from serving Mr. Bronstein, despite the fact that he is the registered agent designated to accept service, Mr. Bronstein merely states that he has *no record* of receiving the documents and did not send them to ULRS. That declaration does nothing to allay the Court's concern that Defendant ULRS and/or its registered agent is purposefully evading service of process, in contravention of its obligation as a corporation doing business in California.

Indeed, each and every declaration submitted by ULRS includes reasons it could not have been served through its own registered agent, down to claiming that security guards are specifically directed to put such documents in a bankers box rather than deliver them to the intended recipient. This practice is wholly inconsistent with ULRS' legal obligation to establish a registered agent who can accept service on behalf of the corporation.

That said, this Court must recommend vacating the default judgment because Plaintiff did not comply with one of the requirements for service under these circumstances by also mailing the summons and complaint to ULRS.[2]

Plaintiff's legal argument why its service complied with California law is as follows:

> [S]ervice was proper on ULRS. Service was performed at the address ULRS has registered with the California Secretary of State. The process server left the summons and complaint with the security guard of ULRS's building, who was the person in charge. In *Bein v. Brechtel-Jochim Group, Inc.*, 6 Cal.App.4th 1387

---

[2] Defendant ULRS also argues that Plaintiff was required to make more than one attempt to personally serve Bronstein before using substituted service on a security guard. (*See* ECF No. 25 at 4-5; ECF No. 28.) Such a requirement arguably does not apply to attempts to serve a registered agent, when that registered agent thwarts service of process. However, the Court need not address this issue because, as discussed below, Plaintiff did not comply with one of the statutory requirements for substituted service.

7

>   (1992), the court held that service of process upon the gate guard constituted
>   effective service on appellants. The court reasoned that the relationship between
>   the gate guard and the appellants made it more likely than not that the gate guard
>   would deliver process to appellants. Here, the security guard called back into the
>   office and was informed to deny any further access. The process server then left
>   the documents with the security guard. The security guard understood what the
>   process server was doing and did not refuse the documents. Therefore, the process
>   server performed his duties and acted precisely how he was trained to do under
>   these circumstances.

(ECF No. 23, at p. 5).

In *Bein v. Brechtel-Jochim Group, Inc.,* 6 Cal.App.4th 1387 (Cal. Ct. App. 1992), the California Court of Appeals held that service was effective when made on a security guard at a gated community where Plaintiff had otherwise complied with Section 415.20, holding:

>   The evident purpose of Code of Civil Procedure section 415.20 is to permit service
>   to be completed upon a good faith attempt at physical service on a *responsible
>   person....*" (*Ibid.,* emphasis added.) Service must be made upon a person whose
>   "relationship with the person to be served makes it more likely than not that they
>   will deliver process to the named party." (*50 Court St. Assoc. v. Mendelson et
>   al.* (1991) 151 Misc.2d 87, 572 N.Y.S.2d 997, 999.) Here, the gate guard's
>   relationship with appellants made it more likely than not that he would deliver
>   process to appellants. We note they do not claim they failed to receive notice of
>   service.

*Id.* at 1393–1394.

However, in that case, Plaintiff also mailed the summons and complaint to the Defendant. *Id.* at 1391 ("Bein mailed copies of the summons and complaint to the Brechtels' residence within a few days."). The step of mailing the summons and complaint is required to comply with the underlying section relied on in *Bein*, California Code of Civil Procedure 415.20, which states:

>   (b) If a copy of the summons and complaint cannot with reasonable diligence be
>   personally delivered to the person to be served, as specified in Section
>   416.60, 416.70, 416.80, or 416.90, a summons may be served by leaving a copy of
>   the summons and complaint at the person's dwelling house, usual place of abode,
>   usual place of business, or usual mailing address other than a United States Postal
>   Service post office box, in the presence of a competent member of the household
>   or a person apparently in charge of his or her office, place of business, or usual
>   mailing address other than a United States Postal Service post office box, at least
>   18 years of age, who shall be informed of the contents thereof, *and by thereafter
>   mailing a copy of the summons and of the complaint by first-class mail, postage
>   prepaid to the person to be served* at the place where a copy of the summons and
>   complaint were left. Service of a summons in this manner is deemed complete on
>   the 10th day after the mailing.

Cal. Code. Civ. P. § 415.20(b) (emphasis added).

This mailing requirement is not just a technicality. In a case like this, where there is a dispute whether Defendants or the registered agent received the summons and complaint, a lack of mailing precludes Plaintiff from establishing actual notice.

Because Plaintiff failed to mail the summons and complaint to ULRS as required by section 415.20, Plaintiff cannot establish service through leaving the summons and complaint with the security guard at the building of the registered agent. Thus, while the Court has doubts about Defendant's good faith acceptance of service through its registered agent, it cannot find that Defendant was adequately served under California law. As a result, this Court lacked personal jurisdiction over Defendant ULRS and the default judgment against it was void. The Court recommends vacating that default judgment.[3]

### V. CONCLUSION AND RECOMMENDATION

The Court therefore RECOMMENDS that Defendant ULRS's motion to set aside default and default judgment (ECF No. 20) be GRANTED.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B). Within fourteen (14) days of service of these findings and recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).

\\\
\\\
\\\
\\\
\\\

---

[3] This recommendation does not affect the judgment as to Defendant Law Offices of Christopher Glenn Beckhom, who did not move to vacate the judgment and does not contest service.

The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Wilkerson v. Wheeler,* 772 F. 3d 834, 839 (9th Cir. 2014); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **August 27, 2018**

/s/ *Erin P. Gross*
UNITED STATES MAGISTRATE JUDGE